UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON NOELLE HARRIS,<br><br>                   Plaintiff,<br><br>          v.<br><br>WELLS FARGO BANK, N.A.,<br><br>                   Defendant. | Case No.  12-cv-05629-JST<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 19 |

Before the Court is Defendant Wells Fargo Bank's Amended Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 19.  Having considered the papers filed in support of the motion, the Court finds the matter appropriate for resolution without oral argument.  *See* Civil L.R. 7-1(b).  For the reasons set forth below, the motion is granted in part and denied in part.

## I.    FACTS

The Court takes the following allegations from the complaint as true for the purposes of this motion to dismiss.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Plaintiff Sharon Harris owns residential property in San Carlos, California.  Compl., 1st Am., ECF No. 11 ¶ 1.  In purchasing the property in August 2006, Harris entered into a loan agreement by executing a promissory note and deed of trust in favor of World Savings Bank.  *Id.* ¶ 13.  World Savings Bank was acquired by Wachovia Bank, which was then acquired by Defendant Wells Fargo.  *Id.*

For two years, from August 2006 to August 2008, Harris paid her mortgage payment on the sixteenth of each month.  ¶ 14.  She made that arrangement with her account manager, whom she knew by the first name Crystal, in order to coincide with Harris' pay schedule.  Pursuant to that arrangement, Crystal, who knew that processing the payment earlier would result in the check

bouncing, always waited until the next day to process the payment so the payment would clear. *Id.* Each month for two years, Harris called her loan servicer's mortgage department and spoke to Crystal, who would confirm that she received the payment and wait to process it until the seventeenth. *Id.* Until August 2008, Harris' lender never counted those payments as late. *Id.*

In August 2008, Harris submitted her mortgage payment in the usual manner and called the phone number Crystal provided her, but the mortgage department referred her to a new account representative named Stacey. ¶ 15. Harris explained to Stacey the arrangement she had with Crystal, and Stacey reassured her that Wells Fargo would continue to honor it.

When Harris received her next statement from Wells Fargo, however, she was shocked to discover that Wells Fargo had processed her mortgage payment immediately upon receipt, and that the check had bounced. *Id.* She immediately called the mortgage department and asked for either Stacey or Crystal. She was unable to speak to either representative. Instead, a different representative informed her that Wells Fargo had processed the check immediately, and that it was rejected due to insufficient funds. *Id.* Harris offered to pay her mortgage payment immediately, but the new representative told Harris that the bank would no longer honor her prior arrangement, that Wells Fargo would now assess late fees on the rejected payment, and that Wells Fargo would only accept a payment from Harris in the full amount of the mortgage payment and the late fees. *Id.* Harris was never again able to speak with Crystal or Stacey. *Id.*

The next month, Harris again attempted to pay her monthly mortgage payment. ¶ 17. The bank rejected her payment and demanded that she tender both August and September's monthly payments in addition to late fees and attorney's fees. Harris refused to tender that amount in full because, she claimed, the late fees and attorney's fees were assessed wrongfully. *Id.* For the next four or five months, Harris attempted to submit regular monthly payments in the sole amount of her monthly mortgage payment, excluding fees, and Defendant rejected them each time. ¶ 18.

In February 2009, the bank encouraged Harris to apply for a loan modification in order to resolve the "accounting dispute." The bank's representatives specifically told Harris that it was not necessary to continue paying her monthly payments while it reviewed her application. ¶ 19. Harris was afraid that withholding monthly payments would result in more late fees, but

United States District Court
Northern District of California

1    Defendant continually reassured her that it would not.  *Id.*  Defendant also told Harris that failing

2    to pay her monthly payments would not result in foreclosure, and that the bank would not report

3    her failure to pay her mortgage to credit agencies because she was withholding payments at their

4    instruction.  *Id.*

5         Wells Fargo recorded a notice of default with the San Mateo County Recorder's Office on

6    March 25, 2012.  ¶ 20.  At least until November 2012, Harris continued to attempt to make her

7    monthly payments, and Wells Fargo continued to reject them.  ¶ 21.  From at least March to

8    November 2012, Wells Fargo assured Harris that it was working to resolve the dispute over the

9    timing of her mortgage payments and that it would not foreclose.  *Id.*  Harris later learned that

10   Wells Fargo had reported her failure to pay her mortgage payments to credit agencies, which

11   substantially and negatively affected her credit score.  ¶ 22.

12        Harris alleges that she was, at all times, "ready, willing, and able" to resume her monthly

13   payments had the bank waived the late fees and attorney's fees.  Harris filed this action in San

14   Mateo County Superior Court; Wells Fargo removed the action to this Court on November 1,

15   2012.  Harris filed the operative First Amended Complaint on November 28, 2012, alleging claims

16   for breach of the covenant of good faith and fair dealing, promissory estoppel, intentional

17   misrepresentation, negligent misrepresentation, violation of California Civil Code sections 2923.5

18   and 2924, breach of contract, reformation, invasion of privacy, and violation of California's Unfair

19   Competition Law, Bus. & Prof. Code § 17200.  ¶ 11.  Harris seeks an injunction preventing Wells

20   Fargo from foreclosing or seeking to evict her, injunctive relief, including an order that Wells

21   Fargo repair her credit, and compensatory, statutory, and punitive damages, disgorgement,

22   attorneys' fees, and costs.

23   **II.    LEGAL STANDARDS**

24        On a motion to dismiss, the Court accepts the material facts alleged in the complaint,

25   together with reasonable inferences to be drawn from those facts, as true.  *Navarro*, *supra,* 250

26   F.3d at 732.  However, "the tenet that a court must accept a complaint's allegations as true is

27   inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory

28   statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of

United States District Court
Northern District of California

3

1    truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair

2    notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202,

3    1216 (9th Cir. 2011), *cert. denied*, --- U.S. ----, 132 S.Ct. 2101 (2012).

4          In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a

5    claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

6    (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a

7    defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when

8    the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9    defendant is liable for the misconduct alleged." *Id.*  In the Ninth Circuit, "[i]f there are two

10   alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of

11   which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6).

12   Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is

13   so convincing that plaintiff's explanation is *im*plausible." *Starr*, 652 F.3d at 1216 (original

14   emphasis).

15         Claims which sound in fraud are subject to a heightened pleading standard.  "In alleging

16   fraud or mistake, a party must state with particularity the circumstances constituting fraud or

17   mistake. Fed. R. Civ. P. 9(b).  The allegations must be specific enough to give a defendant notice

18   of the particular misconduct alleged to constitute the fraud such that the defendant may defend

19   against the charge. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In general,

20   allegations sounding in fraud must contain "an account of the time, place, and specific content of

21   the false representations as well as the identities of the parties to the misrepresentations." *Swartz*

22   *v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

23   **III.    REQUEST FOR JUDICIAL NOTICE**

24         On a Rule 12(b)(6) motion to dismiss, the Court generally may not consider materials

25   beyond the pleadings.  However, the Court may properly take judicial notice of material attached

26   to the complaint and of matters in the public record pursuant to Federal Rule of Evidence 201(b).

27   A Court "shall take judicial notice if requested by a party and supplied with the necessary

28   information." Fed. R. Evid. 201(d).  *See Sato v. Wachovia Mortg., FSB*, 11-cv-00810-EJD, 2011

United States District Court
Northern District of California

4

1   WL 2784567, at *2 (N.D. Cal. July 13, 2011).  Accordingly, the Court GRANTS Defendant's

2   unopposed request for judicial notice of several documents concerning the underlying agreement

3   between the parties and Plaintiff's bankruptcy proceedings, initiated in August 2012, ECF No. 17,

4   and has considered those materials in ruling on the present motion.

5   **IV.   ANALYSIS**

6       Wells Fargo moves to dismiss Plaintiff's First Amended Complaint in its entirety based on

7   several arguments addressed to the entire complaint, as well as arguments specific to each cause of

8   action.  ECF No. 19.  The Court addresses Wells Fargo's arguments concerning the tender rule,

9   plausibility, and preemption first, followed by Defendant's arguments concerning Plaintiff's

10  individual causes of action.

11      **A.   The Tender Rule Does Not Apply to Plaintiff's Claims**

12      Wells Fargo invokes the tender rule to argue that Plaintiff's "inability to tender her

13  considerable debt is a death knell to this action." *Id.* at 2.  Defendant argues that Harris' failure to

14  allege in her complaint that she can and will tender the amount that she owes on her mortgage

15  precludes her from challenging the foreclosure sale or seeking injunctive relief.

16      The tender rule is an equitable doctrine meant to prevent courts "from uselessly setting

17  aside a foreclosure sale on a technical ground when the party making the challenge has not

18  established his ability to purchase the property." *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d

19  1179, 1187 (N.D. Cal. 2012) (quotation omitted).  Thus, "as a precondition to challenging a

20  foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a

21  valid and viable tender of payment of the secured debt." *Sacchi v. Mortgage Elec. Registration

22  Sys., Inc.*, 11-cv-1658-AHM, 2011 WL 2533029, at *9 (C.D. Cal. June 24, 2011) (quotation

23  omitted).  However, courts do not apply the tender rule if it would produce an inequitable result.

24  *See id.* (where plaintiff sought to prevent foreclosure, applying tender rule was "grossly

25  inequitable" because pre-foreclosure notice requirements were meant to help avoid foreclosure in

26  the first instance); *Tamburri v. Suntrust Mortg., Inc.*, 11-cv-2899-EMC, 2011 WL 6294472, at *3–

27  5 (N.D. Cal. Dec. 15, 2011) (listing exceptions to tender rule; noting several courts do not apply

28  tender rule if action is brought before foreclosure sale).

United States District Court
Northern District of California

United States District Court
Northern District of California

The Court finds that the allegations in the First Amended Complaint make application of the tender rule inequitable. Application of the tender rule in this case would require Plaintiff to tender a debt she claims she does not owe to a bank that refused, in the first instance, to accept her monthly mortgage payments in order to prevent an unlawful foreclosure sale. Under these circumstances, Plaintiff is permitted to challenge the validity of the foreclosure sale without first being required to cure the default she claims exists only by virtue of Defendant's misconduct. An obligor may not prevent the performance of an obligee and then demand a tender of performance that the obligor itself frustrated. *See* Cal. Civ. Code § 1511–12; *Barnes v. Osgood*, 103 Cal. App. 730, 734, 284 P. 975, 976 (1930) ("The law does not require the performance of a vain act, and a formal tender of performance is excused by the refusal in advance of the party as to whom such performance should be made to accept the same."). Moreover, several courts have held the tender rule inapplicable in pre-foreclosure cases where the plaintiff challenges the validity of the foreclosure, as Plaintiff does here. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012); *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 225–226 (Cal. Ct. App. 2010).

### B.    Plaintiff's Complaint is Not Implausible as a Matter of Law

Defendant moves to dismiss each of Plaintiff's claims on the grounds that her factual allegations are "implausible as a matter of law." ECF No. 19 at 3. Defendant argues that Harris "cannot credibly allege that Wells Fargo induced her to cease making mortgage payments, and more importantly, plaintiff cannot maintain that the purported statements of a bank employee have caused her actual damages." *Id.*

In this circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss." *Starr*, 652 F.3d at 1216. Dismissal is appropriate only when a "defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* (original emphasis). Here, Wells Fargo does not provide an alternative explanation for Plaintiff's allegations. Defendant does not even explain why Plaintiff's allegations are not credible. Instead, Wells Fargo merely asserts in conclusory fashion that Plaintiff's allegations are false, and that

6

1   Plaintiff's conduct was unreasonable.  Though courts may employ common sense and past

2   experience in making a determination of plausibility, it is not the Court's role to determine, at the

3   pleading stage, whose facts are correct.  This Court accordingly rejects Defendant's claim that

4   Plaintiff's allegations are "implausible as a matter of law."

5          **C.     HOLA Preemption Does Not Apply**

6           Defendant argues that each of Plaintiff's causes of action are preempted by the Home

7   Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.*, and its implementing regulations as

8   promulgated by the Treasury Department's Office of Thrift Supervision ("OTS").  *See* 12 C.F.R. §

9   560, *et seq.* ("OTS regulations").[1]

10          Through HOLA, the OTS regulations constitute field preemption in "lending regulation of

11  federal savings associations." 12 C.F.R. § 560.2(a).  "[F]ederal savings associations may extend

12  credit as authorized under federal law . . . without regard to state laws purporting to regulate or

13  otherwise affect their credit activities," except as provided by OTS regulations.  *Id.*  In assessing

14  whether HOLA preempts a particular lawsuit, the first question is whether the cause of action

15  asserted, "as applied, is a type of state law contemplated" by the list of examples of state laws

16  exempted by HOLA included in section 560.2(b).  "If it is, the preemption analysis ends."  *Silvas*

17  *v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1004–05 (9th Cir. 2008).  If it is not, courts may

18  proceed to section 560.2(c) and determine whether the cause of action asserted, as applied: (1) fits

19  within the types of laws contemplated by section 560.2(c)'s savings clause; (2) only incidentally

20  affects the lending operations of the savings association; and (3) is otherwise consistent with

21  HOLA.  *See id.*  Among the examples of the types of state laws listed in the savings clause are:

22  "(1) Contract and commercial law; (2) Real Property Law . . . (4) Tort law . . . ;" and "(6) Any

23  other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only

24  an incidental effect on lending operations or is not otherwise contrary to the purposes expressed"

25  in 12 C.F.R. 560.2(a).  12 C.F.R. § 560.2(c).

26

27  _____

[1] The parties agree, and the Court assumes for purposes of Wells Fargo's motion to dismiss, that
World Savings Bank was a federally chartered savings bank, subject to HOLA and the OTS

28  regulations, at the time that Plaintiff executed the deed of trust, and that the OTS regulations apply
to Plaintiff's action here by virtue of Wells Fargo's subsequent acquisition of the loan.

United States District Court
Northern District of California

United States District Court
Northern District of California

In order for a plaintiff to avoid HOLA preemption, it is insufficient to invoke state laws of general applicability; the OTS regulations permit such lawsuits only where the laws, *as applied*, would only incidentally affect the bank's lending operations.  "Even state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact thrifts in areas listed in § 560.2(b)."  *Andrade v. Wachovia Mortg.*, 09-cv-0377-JM, 2009 WL 1111182, at *2 (S.D. Cal. Apr. 21, 2009) (*citing Silvas*, 514 F.3d at 1006).  In contrast, actions based on the "general duty not to misrepresent material facts" generally are not preempted. *DeLeon v. Wells Fargo Bank, N.A.*, 10-cv-01390-LHK, 2011 WL 311376, at *6 (N.D. Cal. Jan. 28, 2011).

Among the types of laws listed under section 560.2(b) as expressly preempted by HOLA are "state laws purporting to impose requirements regarding:

> (1)   Licensing, registration, filings, or *reports by creditors*; . . .
> (4)   The *terms of credit, including* amortization of loans and the deferral and capitalization of interest and *adjustments to the interest rate, balance, payments due, or term to maturity of the loan* . . ."; and
> (10) "*Processing*, origination, *servicing*, sale or purchase of, or investment or participation in, *mortgages*."

12 C.F.R. § 560.2(b)(1), (4), (10) (emphasis added).  In its motion, Wells Fargo argues that the words and phrases bolded above — "reports by creditors," "terms of credit," and the words "processing" and "servicing" of mortgages — bar each of Plaintiff's claims.  Plaintiff argues that her allegations of affirmative misrepresentation avoid HOLA preemption because her claims invoke state laws of general applicability and rely on the general duty not to misrepresent material facts.

Other courts in this district have relied on the Seventh Circuit's observation that, for purposes of determining whether a state cause of action is preempted by HOLA, it is helpful to ask whether the claim falls on the "regulatory side of the ledger" or, "for want of a better term . . . the common law side."  *Gabali v. OneWest Bank,* 12-cv-02901-EJD, 2013 WL 1320770, at *10 (N.D. Cal. Mar. 29, 2013) (*quoting In re Ocwen Loan Servicing, LLC,* 491 F.3d 638, 645 (7th Cir. 2007)).  In misrepresentation cases, if "the court infers from the allegations that Defendant was required to offer a loan modification or required to make certain disclosures or statements to

8

1    Plaintiff, then the allegations are preempted because they surely seek to impose an obligation

2    which affects lending." *Id.* By contrast, "if the court infers that the allegations only invoke a

3    general duty to not engage in fraud during business dealings, then the claim only incidentally

4    affects lending and is not preempted." *Id.* (*citing Ortiz v. Wells Fargo Bank, N.A.,* 10-cv-4812-

5    RS, 2011 WL 4952979, at *2–4 (N.D. Cal. May 27, 2011); *DeLeon,* 2011 WL 311376, at *6).

6         For example, in *Chao v. Aurora Loan Services, LLC*, 10-cv-3118-SBA, 2012 WL

7    6652442, at *3–6 (N.D. Cal. Dec. 20, 2012), the court considered allegations that Aurora Loan

8    Services led the plaintiff class to believe their participation in reduced monthly payment "Workout

9    Agreements" would enable them to cure their defaults and avoid foreclosure. The plaintiffs

10   alleged that, in actuality, the statements were false, made in order to "lull [the borrowers] into a

11   false sense of security that they were safe from foreclosure, which, in turn, effectively obviated

12   their ability to avoid foreclosure by, inter alia, exercising their statutory right to reinstatement."

13   *Id.* Judge Armstrong rejected the preemption argument Wells Fargo presses here because it found

14   that the plaintiffs' recission and restitution claims were "based on a general duty not to

15   misrepresent material facts and do not purport to regulate lending activity." *Id.*

16        Here, Plaintiff alleges that Wells Fargo: (1) promised and then refused to wait to process

17   her payments until the seventeenth day of the month; (2) refused to accept her monthly mortgage

18   payments; (3) promised her that withholding monthly mortgage payments, which they instructed

19   her to do while they considered her loan modification application, would not lead to foreclosure or

20   be reported to credit agencies; and (4) initiated foreclosure proceedings and reported Plaintiff's

21   failure timely to pay mortgage payments to credit agencies despite its promise not to do so. Each

22   of those allegations falls squarely on the common law side of the ledger. Plaintiff does not

23   attempt to modify Wells Fargo's credit reporting, loan servicing, or payment processing

24   obligations and privileges under HOLA and the OTS regulations vis-à-vis other homeowners and

25   debtors. Plaintiff merely alleges that Wells Fargo chose to make certain affirmative

26   representations *to her* and then neglected to follow through in bad faith. As such, Plaintiff's

27   claims are not preempted, and that basis for Wells Fargo's motion to dismiss must fail. *See*

28   *Plastino*, *supra*, 873 F. Supp. 2d at 1185 (no preemption where plaintiff alleged Wells Fargo

United States District Court
Northern District of California

9

promised her she qualified for loan modification, "that it would not accept any new payments until the trial modification began, and that no foreclosure sale would be conducted while the loan modification process was underway."); *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1186 (C.D. Cal. 2011) (no preemption where plaintiff alleged Wells Fargo "violated an agreement with plaintiff to cure the default and reinstate the loan, refused to communicate with plaintiff and her authorized representative regarding the foreclosure sale and the reinstatement amount, and executed the foreclosure through fraud and bad faith.").

Plaintiff's claim for violation of California's non-judicial foreclosure requirements is not preempted either.  HOLA does not address the right to foreclose on real property as security for a loan, and the OTS regulations do not mention foreclosure as a type of state law preempted by HOLA.  This Court has previously observed that "[t]here is no federal or nationally-uniform standard for creating and enforcing security interests in real property.  Were it not for the fact that California chose to permit non-judicial foreclosures in the first place, the lender would not have that power."[2] *Ortiz*, *supra*, 2011 WL 4952979, at *3.  *See also Osorio v. Wells Fargo Bank*, 12-cv-02645-RS, 2012 WL 1909335, at *2 (N.D. Cal. May 24, 2012) ("A lender cannot on the one hand rely on California law as the foundation for its right to conduct a non-judicial foreclosure, while on the other hand ignore any restrictions or procedural requirements that are part of that process under California law.")

### D.   Contract Claims

Wells Fargo moves to dismiss Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, and reformation as inadequately pled.

#### i.   Breach of Contract

Wells Fargo moves to dismiss Plaintiff's breach of contract claim based on the statute of frauds, arguing that oral agreements, such as the promises account representatives allegedly made

---

[2] The Court is mindful that other decisions in this district have held California's pre-foreclosure notice requirements preempted by HOLA, but is of the opinion that the approach in *Ortiz, Osorio*, and *Fernandez* most appropriately gives effect to HOLA and the OTS regulations without sweeping away the states' fundamental and longstanding ability to regulate the conduct of non-judicial foreclosure, a remedy for breach of contract that is entirely a creature of state law.

United States District Court
Northern District of California

to Plaintiff, cannot modify the underlying promissory note and deed of trust.  ECF No. 19 at 9.

The First Amended Complaint does not allege an oral modification to the underlying contract,

however.  Plaintiff alleges that Wells Fargo breached its obligations under section 28 of the deed

of trust by inducing Plaintiff not to pay her monthly mortgage payments and then charging her late

fees and invoking the deed's power of sale.  ECF No. 11 ¶¶ 86–88.

   The deed of trust constitutes a contract between the trustor and the beneficiary, with the

trustee acting as agent for both.  *Hatch v. Collins,* 225 Cal. App. 3d 1104, 1111 (1990).  California

Civil Code section 1511 provides:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the extent to which they operate:
>
> (1)  When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law, even though there may have been a stipulation that this shall not be an excuse
>
>         * * *
>
> (3)  When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time.

In addition, "[i]f the performance of an obligation be prevented by the creditor, the debtor is

entitled to all the benefits which he would have obtained if it had been performed by both parties."

Cal. Civ. Code § 1512.

   The elements of a cause of action for breach of contract are: the existence of the contract,

performance by or excuse for nonperformance by the plaintiff, breach by the defendant, and

damages.  *First Comm'l Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001).  Plaintiff has

adequately alleged all four elements.[3]  Plaintiff has adequately alleged that she was excused from

performing by Wells Fargo's refusal to accept her mortgage payments, that Wells Fargo was

obligated under the deed not to foreclose absent certain conditions precedent as expressly stated in

the deed, and that Wells Fargo breached that obligation by initiating the foreclosure process even

though the conditions precedent were absent.  Plaintiff also alleges that Wells Fargo initiated the

---

[3] The parties do not contest the existence of the contract.

United States District Court
Northern District of California

foreclosure process in contravention of the deed's express language providing that Wells Fargo must exercise the power of sale in compliance with applicable law. *See Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1189 (C.D. Cal. 2011) (breach of contract claim was adequately pled where deed of trust stated that foreclosure sale would proceed in compliance with applicable law).

As to the element of damages, Defendant repeatedly makes the argument that Plaintiff has not plausibly alleged damages because she was unable to pay her mortgage in the first instance.[4] That argument is directly contradicted by the First Amended Complaint, which states: "At all times, Plaintiff was ready, willing, and able to resume making her regular monthly mortgage payments." ECF No. 11 ¶ 5. Plaintiff has therefore adequately alleged a claim for breach of contract based on Wells Fargo's refusal of Plaintiff's monthly payments. Defendant's motion to dismiss Plaintiff's sixth cause of action is DENIED.

### ii. Breach of the Covenant of Good Faith and Fair Dealing

Unlike her breach of contract claim, which is premised solely on Wells Fargo's refusal to accept monthly mortgage payments, Plaintiff's claim for breach of the covenant of good faith and fair dealing is premised both on (1) Wells Fargo's refusal to accept Plaintiff's monthly mortgage payments, and (2) Wells Fargo's promise that Plaintiff could withhold her monthly mortgage payments without incurring late fees or resulting in a default or negative reports to credit agencies. ECF No. 11 ¶¶ 29–30.

The covenant of good faith and fair dealing is implied by law in every contract. Its purpose is to prevent a contracting party from unfairly frustrating another party's right to receive the benefits of the contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). However, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.* In order to sustain a claim for breach of the covenant, a plaintiff must allege that (1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract

---

[4] Defendant also makes several arguments based on Plaintiff's current financial status, none of which are relevant to Plaintiff's claims about events that took place in August 2008.

1   required him to do or that he was excused from having to do; (3) all conditions required for the

2   defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's

3   right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.

4   *Harvey v. Bank of Am., N.A.*, No. 12-cv-3238-SC, 2013 WL 632088, at *2–3 (N.D. Cal. Feb. 20,

5   2013).

6       Here, Plaintiff has adequately alleged a violation of the covenant of good faith and fair

7   dealing by alleging that Wells Fargo refused her monthly mortgage payments, thereby frustrating

8   her right to benefit from her contract.  *See id.* at *3 (denying motion to dismiss good faith and fair

9   dealing claim where lender advised plaintiff not to make payments in order to qualify for loan

10  modification and assured plaintiff failure to pay would not result in foreclosure or late fees).

11      Plaintiff's second theory of liability under her covenant claim alleges that Wells Fargo

12  promised her she could withhold her monthly payments without incurring late fees, causing a

13  default, or resulting in negative credit consequences.  ECF No. ¶ 29–30.  Under California law,

14  "when a party is given absolute discretion by express contract language, the courts will imply a

15  covenant of good faith and fair dealing to limit that discretion in order to create a binding contract

16  and avoid a finding that the promise is illusory."  *Storek & Storek, Inc. v. Citicorp Real Estate,*

17  *Inc.*, 100 Cal. App. 4th 44, 57 (2002).  Here, the contract grants Wells Fargo the discretion to

18  enforce, or not enforce, its right to charge late fees, report to credit agencies, and to foreclose

19  following a default.  *See, e.g.,* ECF No. 20, Ex. F § 10(b) ( "even if Lender does not exercise or

20  enforce any of its rights under the Security Instrument . . . Lender may exercise and enforce them

21  in the future").

22      Plaintiff specifically alleges that Wells Fargo's conduct prevented her from making her

23  monthly mortgage payments, and that had she known that Wells Fargo would revive its right to

24  count her payments as late after waiving it, she would have continued paying her mortgage.  ECF

25  No. 11 ¶ 32–35.  Plaintiff's allegation that Wells Fargo exercised this discretion so as to prevent

26  Plaintiff from complying with her contract obligations and face foreclosure adequately states a

27  claim for breach of the covenant.  *See Reyes v. Wells Fargo Bank, N.A.*, 10-cv-01667-JCS, 2011

28  WL 30759, at *16 (N.D. Cal. Jan. 3, 2011) (mortgage forbearance agreement allowing Wells

United States District Court
Northern District of California

13

1    Fargo to foreclose at its sole discretion regardless of borrower's performance or non-performance

2    gave rise to duty under the covenant of good faith and fair dealing).

3         Wells Fargo argues that its alleged promises were extra-contractual, and that therefore it

4    cannot be bound by them, citing *Plastino*, 873 F. Supp. 2d at 1191. *Plastino* is inapposite. In that

5    case, the court held that a plaintiff's good faith and fair dealing claim could not be based on Wells

6    Fargo's promise not to foreclose while the plaintiff's loan modification application was under

7    review. The plaintiff there failed to point to any contractual provisions concerning the plaintiff's

8    theory of liabilty. *Id.* (Plaintiff's "claim seems to allege not a violation of the standing contracts

9    with Defendants but of the entirely separate promise Defendant allegedly made to postpone

10   foreclosure while the loan modification was pending.") (quotation omitted). Plaintiff here points

11   to specific contractual provisions that bear directly on her allegation that Wells Fargo's promises

12   were (1) authorized by the contract, and (2) made unfairly or in bad faith.[5]

13        The Court finds these allegations sufficient to state a claim for breach of the covenant of

14   good faith and fair dealing. Wells Fargo's motion to dismiss Plaintiff's first cause of action is

15   DENIED.

16        **iii.    Reformation**

17        Wells Fargo moves to dismiss Plaintiff's reformation claim as insufficiently pled. Plaintiff

18   alleges that section 10 of the deed of trust, which permits Wells Fargo to refrain from exercising

19   its rights under the deed without waiving them, is unconscionable and must be stricken from the

20   contract. However, Wells Fargo correctly notes that reformation is only appropriate in cases of

21   fraud or mistake. *See Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir.

22   2012). Plaintiff has failed to allege any facts concerning the formation of the contract that would

23   give rise to an inference that it was formed by fraud or mistake. Plaintiff's seventh cause of action

24

25   _____

     [5] Wells Fargo also argues that Plaintiff's allegations are subject to the statute of frauds, citing

26   *Secrest v. Security National Mortgage Loan Trust*, 167 Cal. App. 4th 544, 553 (2008). Again,
     Wells Fargo misconstrues the First Amended Complaint. Plaintiff's contract claims do not allege

27   that Wells Fargo modified the deed of trust, or that the parties entered into a new contract.
     Instead, Plaintiff alleges that Wells Fargo exercised its rights under the deed of trust as written in a

28   manner that hindered her performance and deprived her of the benefit of the bargain. Those
     allegations do not implicate the statute of frauds.

for reformation is therefore DISMISSED with leave to amend.

### E.    Promissory Estoppel

The purpose of the promissory estoppel doctrine is to make binding a promise that otherwise lacks consideration. *See Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). The elements of a promissory estoppel claim are (1) a promise, (2) reliance on that promise that (3) is reasonable and foreseeable, and (4) injury. *Id.*

Plaintiff here alleges that Wells Fargo, through its representatives, repeatedly promised her that her failure to make monthly payments would not result in default, late fees, or negative credit consequences during the pendency of her loan modification application. Relying on that promise, in a reasonable manner entirely foreseeable by Wells Fargo, Plaintiff refrained from making her monthly payments. Wells Fargo then charged Plaintiff late fees, recorded a notice of default, and reported her failure to pay to credit agencies. Plaintiff alleges that she was injured because absent the promise she would have paid her monthly mortgage payments, and that her reliance on the promise resulted in negative credit consequences, late fees, and foreclosure proceedings. Nothing more is required to adequately plead a promissory estoppel claim. *See Harvey*, 2012 WL 5337425, at *4. *See also Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, (Cal. Ct. App. 2010) (denying motion to dismiss promissory estoppel claim where lender promised to postpone foreclosure and borrower, relying on the promise, procured another loan to cure default).

Wells Fargo argues that the deed of trust forecloses a promissory estoppel claim because "promissory estoppel is only available as a substitute for a breach of contract claim — where there is a failure of consideration and hence no contract," ECF No. 19 at 12, *citing U.S. Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 904 (2005). *U.S. Ecology* does not so hold. In any event, Plaintiff is permitted to plead in the alternative. *See* Fed. R. Civ. Proc. 8(e)(2); *Putnam v. Putnam Lovell Grp. NBF Securities, Inc.*, 05-cv-1330-CW, 2006 WL 1821207, at *6 (N.D. Cal. June 30, 2006).

The Court DENIES Defendant's motion to dismiss Plaintiff's second cause of action for promissory estoppel.

15

### F.      Misrepresentation Claims

Plaintiff brings claims for both fraud and negligent misrepresentation.  The elements of Plaintiff's promissory fraud claim, a subspecies of intentional misrepresentation, are: (1) a representation of material fact; (2) made with knowledge, actual or virtual, of the true facts; (3) to a party actually or permissively ignorant of the truth; (4) with the intention, actual or virtual, that the other party act upon it; and (5) inducing the other party to act.  *San Diego Mun. Credit Union v. Smith*, 176 Cal. App. 3d 919, 923 (Cal. Ct. App. 1986).  *See also* Cal. Civ. Code §§ 1709, 1710(4).  Plaintiff's negligent misrepresentation claim differs only with respect to Defendant's alleged state of mind; for negligent misrepresentation, Plaintiff need only allege, and ultimately prove, that Wells Fargo made the representation without reasonable grounds for believing it to be true.  *Id.* at 1010.  Plaintiff bases both her fraud claims on two allegations: (1) that Defendant would not process her August 2008 payment until at least the day after she submitted it, on the seventeenth day of the month; and (2) that Plaintiff's failure to pay would not result in late fees, foreclosure, or negative credit consequences.

Defendant first argues that the first representation cannot support Plaintiff's fraud claim because Crystal and Stacey, the bank's representatives, merely "informed Plaintiff that her checks would take one day to process."  ECF No. 19 at 13, *citing* ECF No. 11 ¶¶ 2, 15, 47).  That mischaracterizes Plaintiff's allegations.  Harris alleges that she reached an arrangement with Wells Fargo to pay her payments on the sixteenth day of each month and that Wells Fargo assured her it would not process the payments until the next day.  ECF No. 11 ¶¶ 2, 15, 47.  Plaintiff also alleges that Crystal, her account representative, knew that processing Plaintiff's checks any earlier would cause them to bounce.  *Id.*

As to the second representation concerning the consequences of Plaintiff's failure to pay her monthly payments, Defendant argues that claim is not pled with specificity as required by Federal Rule of Civil Procedure 9(b).

Generally, where a Plaintiff asserts a cause of action for fraud against a corporation, the plaintiff must also allege "the names of the persons who made the allegedly fraudulent

United States District Court
Northern District of California

representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991). The First Amended Complaint merely alleges that on or around February 2009, an unknown representative assured Plaintiff that she need not make payments while her loan modification application was under review. Plaintiff also alleges that, following this, Defendant repeatedly reassured her that no negative consequences would accrue from her failure to pay her mortgage payments. These allegations are insufficient to meet Plaintiff's burden of pleading fraud with specificity. The Court will therefore dismiss Plaintiff's third cause of action for fraud with leave to amend.

Finally, Defendant argues that Plaintiff cannot sustain her negligent misrepresentation claim because she has not established that Wells Fargo owed her a duty of care. *See Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (Cal. Ct. App. 1991) ("a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money"). Defendant is correct. However, the rule that a lender does not owe a duty of care to a borrower is a general rule with limited exceptions, and Plaintiff may amend her complaint if she believes that an exception applies in this case. *See Roussel v. Wells Fargo Bank*, 12-cv-04057-CRB, 2013 WL 146370, at *6 (N.D. Cal. Jan. 14, 2013) (recognizing limits of *Nymark* decision and setting forth test for determining whether lender's conduct as alleged by borrower plaintiff gives rise to duty of care).

Plaintiff's promissory fraud claim is DISMISSED with leave to amend, to allege her claims regarding Wells Fargo's 2009 representations with greater specificity. Plaintiff's negligent misrepresentation claim is also DISMISSED with leave to amend.

### G. Violation of California Foreclosure Procedures

Plaintiff alleges two violations of California's foreclosure laws: first, Plaintiff alleges that Wells Fargo failed to comply with the statutory requirements of California Civil Code section 2923.5, which governs pre-foreclosure notice to the borrower; second, Plaintiff alleges that Wells Fargo recorded a notice of default in violation of California Civil Code section 2924 by

17

1  wrongfully invoking the power of sale in the deed of trust after instructing Plaintiff to default on

2  her loan by withholding monthly mortgage payments.

3        As to Plaintiff's section 2923.5 claim, the decision in *Mabry v. Superior Court*, 185 Cal.

4  App. 4th 208, 236 (Cal. Ct. App. 2010), is instructive.  There, the court held that section 2923.5

5  (1) is not preempted by HOLA, (2) provides for a private right of action to postpone a foreclosure

6  sale, and (3) necessarily prescribes an "individualized process," compliance with which is a

7  question that must be resolved by the trier of fact.  *Id.*  Defendant again argues that Plaintiff's

8  allegations are implausible because it is unlikely that Wells Fargo "allowed its borrower to

9  withhold payments for nineteen months . . . without any attempt to contact this borrower regarding

10  the growing arrearage."  ECF No. 19 at 11.  As stated above, the Court does not find Plaintiff's

11  claims implausible as a matter of law.  Because Wells Fargo does not raise any other arguments

12  upon which this Court may find that Plaintiff has failed adequately to allege a cause of action

13  concerning section 2923.5, Wells Fargo's motion to dismiss that claim is DENIED.[6]

14        As for Plaintiff's section 2924 claim, Wells Fargo does not raise any arguments apart from

15  its contention that Plaintiff's allegations are factually implausible, and the Court accordingly

16  DENIES Wells Fargo's motion to dismiss Plaintiff's fifth cause of action.

17        **H.      Invasion of Privacy: False Light**

18        Wells Fargo moves to dismiss Plaintiff's invasion of privacy claim as time-barred by the

19  one-year statute of limitations.  Cal. Code Civ. Proc. § 340.  Wells Fargo recorded the notice of

20  default in March 2010; this action was filed in October 2012.  Wells Fargo's argument is well-

21  taken.

22        Plaintiff argues that her invasion of privacy claim is subject to a two-year limitations

23  period.  For that proposition, Plaintiff cites California Civil Procedure Code section 335.1, the

24

25  _____

26  [6] Wells Fargo does raise, for the first time in reply, the argument that its recorded notice of default is entitled to a "qualified privilege" that "creates a presumption that acts during the foreclosure process are performed innocently."  ECF No. 23 at 13.  Arguments raised for the first time in a reply brief are not properly before the Court, and the Court declines to consider them.

27  *Dannenfelser v. DaimlerChrysler Corp.*, 370 F. Supp. 2d 1091, 1098 (D. Haw. 2005)

28

United States District Court
Northern District of California

18

United States District Court
Northern District of California

decision in *Schneider v. United Airlines, Inc.*, 208 Cal. App. 3d 71, 76 (Cal. Ct. App. 1989), and the decision in *Wiener v. Super. Ct.*, 58 Cal. App. 3d 525, 529 (Cal. Ct. App. 1979).  None of these authorities supports Plaintiff's position, however.  *See* Cal. Civ. Code § 335.1 (setting two-year statute of limitations for torts resulting in physical injury; *id.* § 340(c) (setting one-year statute of limitation period for defamation, libel, and slander actions); *Schneider*, 208 Cal. App. 3d at 76 ("Under Code of Civil Procedure section 340, subdivision 3, a complaint for defamation must be brought within one year of the accrual of the cause of action for defamation."); *Wiener*, 58 Cal. App. 3d at 529 ("The one year period runs from the utterance or publication of the defamatory matter.").  *See also Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal. App. 3d 880, 896 (Cal. Ct. App. 1974) (equating invasion of privacy claims with defamation claims for purposes of statute of limitations).

Plaintiff also argues that equitable tolling is appropriate because "it is reasonable that Plaintiff did not check her credit score yearly."  This argument is unpersuasive; Plaintiff was on notice of the potential negative consequences to her credit report at the very latest in March 2010, when the notice of default was recorded.   Plaintiff's eighth cause of action for invasion of privacy is time-barred and will be DISMISSED with prejudice.  *Boatner v. United States*, 914 F.2d 261 (9th Cir. 1990) ("[d]ismissal with prejudice is warranted where the pleadings before the court demonstrate that a plaintiff would not be entitled to relief under any set of facts").

## I.     California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*

The parties agree that Plaintiff's ninth cause of action for violation of the California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*, is wholly derivative of Plaintiff's other claims.  Because some of Plaintiff's claims have survived this motion to dismiss and will support a claim under section 17200, the Court DENIES Defendant's motion to dismiss Plaintiff's ninth cause of action in accordance with the other terms of this Order.

## V.    CONCLUSION

For the foregoing reasons, the Court finds as follows:

1.  Defendant's request for judicial notice is GRANTED;

2.  The tender rule does not apply to Plaintiff's claims;

19

3.  Plaintiff's claims are not preempted by the Home Owner's Loan Act;

4.  Defendant's motion to dismiss Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, intentional misrepresentation (insofar as that claim relates to Plaintiff's August 2008 mortgage payment), violation of California's foreclosure procedures, and violation of California's Unfair Competition Law is DENIED;

5.  Plaintiff's claims for reformation of the deed of trust and negligent misrepresentation are DISMISSED with leave to amend.

6.  Plaintiff's intentional misrepresentation claim, insofar as the claim relates to Plaintiff's allegation that Defendant instructed her to withhold mortgage payments beginning in February 2009, is DISMISSED with leave to amend.

7.  Plaintiff's invasion of privacy claim is DISMISSED with prejudice.

8.  Plaintiff shall file her Second Amended Complaint by no later than thirty days from the date of this Order.

**IT IS SO ORDERED**.

Dated:  April 30, 2013

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

20